# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ENMRSH, INC.,

     Plaintiff,

v.                                                                    Civ. No. 15-1077 JCH/GBW

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

     Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter comes before the Court on Plaintiff's Motion to Reverse or Remand the Agency Decision. *Doc. 17.* I have reviewed the parties' briefing on the motion (*docs. 18, 27, 32*) and considered oral argument from the parties at a motion hearing held on March 14, 2017. *Doc. 35.* For the reasons explained below, I recommend finding that the ALJ and Appeals Council erred by finding that Plaintiff was not without fault for the overpayment of benefits to the beneficiary Sharlene K. Iddings between February 1999 and March 2003. I further recommend finding that it would be against equity and good conscience to hold Plaintiff liable for repayment due to the undisputed fact that Plaintiff did not misuse the funds. Therefore, I recommend that the Court grant Plaintiff's Motion and reverse the decision of the Commissioner without remanding this action for further proceedings.

# I.  BACKGROUND

Plaintiff is a non-profit organization offering comprehensive services to people with intellectual disabilities, and such services often include managing their clients' Social Security disability benefits.  AR at 39.  In February 1999, Plaintiff was appointed by the Social Security Administration (SSA) to serve as representative payee for the intellectually disabled beneficiary Sharlene K. Iddings.  AR at 15.

Ms. Iddings had been receiving disability benefits since April 1990.  AR at 15, 271.  In June 1997, Ms. Iddings began working at Wal-Mart under a "sheltered workshop," such that her earnings at that position were not considered substantial gainful activity (SGA) which would disqualify her from benefits under the SSA regulations.  AR at 272-73, 294-95; *see also* 20 C.F.R. § 404.1573(c) (explaining that work done under special conditions, such as in a sheltered workshop environment, may not be considered SGA).  By November 1998, Ms. Iddings's work at Wal-Mart was no longer in a sheltered workshop context, and she was earning above the permissible SGA levels.  AR at 264, 272-75.  The SSA allows a grace period during which a beneficiary may perform substantial gainful activity yet remain entitled to receive benefits for the month she began earning above SGA levels plus the following two months.  AR at 260, 278.  Consequently, Ms. Iddings was no longer entitled to receive benefits as of February 1, 1999.  The SSA appointed Plaintiff as Ms. Iddings's

representative payee on or after this date. AR at 15, 34.[1]

Plaintiff served as Ms. Iddings's representative payee until March 2003, when Ms. Iddings's friend Bonnie Light became her representative payee. AR at 15. During the time it served as representative payee, Plaintiff reported all of Ms. Iddings's wages to Defendant as required by the SSA regulations. AR at 295. Nonetheless, Ms. Iddings continued to erroneously receive benefits payments until May 2005, when Defendant discovered its error and sought to recover the overpayments that occurred between February 1999 and May 2005, totaling $61,263.30. AR at 256-59. On May 18, 2005, Defendant notified Ms. Iddings and Ms. Light of the overpayments and its intent to seek reimbursement, but did not notify Plaintiff. *Doc. 18* at 5; AR at 260-65. Ms. Iddings requested a waiver of the overpayment recovery, which was denied on the basis that she could afford to repay the agency despite a finding that she was without fault for the overpayment due to reporting her wages. AR at 252-53.

Facing financial difficulties, Ms. Iddings again requested a waiver of overpayment recovery in 2009, which was the catalyst of the events underlying the present action. AR at 235-42. When her second waiver request was denied, Ms. Iddings requested a hearing before an Administrative Law Judge (ALJ), which took place on July 20, 2012. AR at 226-29, 369-419. Plaintiff received no notice of the July

---

[1] There is no evidence in the Administrative Record documenting the precise date of Plaintiff's appointment as representative payee for Ms. Iddings. However, Defendant does not dispute that the appointment occurred in February 1999. *Doc. 27* at 1-2.

2012 hearing. During that hearing, the ALJ determined that because Plaintiff served as representative payee during a portion of the time period when Ms. Iddings was overpaid, a supplemental hearing was necessary to determine Plaintiff's liability for the overpayment. AR at 407-08, 410. Plaintiff received notice of the supplemental hearing and its potential liability on June 12, 2013, which was the first notice Plaintiff received of the overpayment at issue. AR at 125. The supplemental hearing took place on July 23, 2013. AR at 287-368. Barbara Marion, Plaintiff's Vice President, and Janelle Moore, Plaintiff's accounting manager, appeared to testify. AR at 289, 290. Ms. Marion and Ms. Moore had both been employed by Plaintiff during the relevant time period, and they testified regarding the organization's general practices when serving as a representative payee for a client receiving disability benefits as well as their knowledge of the relevant regulations governing such benefits. AR at 293-302. No counsel appeared to represent Plaintiff.

The ALJ issued her decision on December 5, 2013, finding that both Ms. Light and Plaintiff were liable for the overpayments that occurred during the respective time periods in which they served as Ms. Iddings's representative payees. AR at 15-23. Since Plaintiff was held liable for the overpayments that occurred between February 1999 and March 2003, the ALJ held that Plaintiff owed $38,098.30 to the agency. AR at 23.

Plaintiff appealed the ALJ's decision to the Appeals Council, which issued its

decision on September 25, 2015. AR at 6-9. The Appeals Council upheld the ALJ's finding that Plaintiff was not without fault for the overpayments that occurred between February 1999 and March 2003 and was thus liable to repay those funds to the agency. AR at 8. However, by the time of the ALJ's December 2013 decision, Ms. Iddings had already repaid a total of $10,143.57 to the agency, bringing the current balance owed to $51,119.73. AR at 23, 15. Initially, the ALJ deducted that amount solely from the portion owed by Ms. Light and did not credit any of the repaid funds to Plaintiff. AR at 23. The Appeals Council overturned that aspect of the ALJ's decision and credited the $10,143.57 already repaid in a proportional fashion to the amounts owed by Plaintiff and Ms. Light, resulting in a final determination that Plaintiff owed $31,790.24.[2] AR at 8-9. Plaintiff filed suit in this court on November 24, 2015, seeking judicial review of the Appeals Council's decision. *Doc. 1.*

## II.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether it (1) is supported by "substantial evidence" and (2) is grounded in an evaluation of the evidence that comports with the proper legal standards. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800-01 (10th Cir. 1991). "In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our

---

[2] The Appeals Council did not provide this specific figure, but Plaintiff was determined to be liable for $38,098.30, or 62.18%, of the total overpayment amount of $61,263.30. AR at 8. According to the instructions of the Appeals Council, the amount owed by Plaintiff should be reduced by 62.18% of $10,143.57, resulting in a reduction of $6,308.06 from $38,098.30 and a final amount of $31,790.24. *See* AR at 9.

judgment for that of the agency." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (citation and internal quotations omitted).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Casias,* 933 F.3d at 800. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id*. at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted).

A reviewing court is generally bound by the Commissioner's findings of fact if they are supported by substantial evidence. *Byron v. Heckler*, 742 F.2d 1232, 1234 (10th Cir. 1984). Where the Commissioner has either failed to apply the correct legal standard or to provide the court with a sufficient basis for determining that the law was correctly applied, however, the court is not so limited in its scope of review, and such failure constitutes grounds for reversal. *Id.* at 1235; *see also Casias*, 933 F.2d at 801.

Generally, other avenues of judicial review of final decisions of the Commissioner are foreclosed by the text of the Social Security Act itself. *See* 42 U.S.C. §

405(h). Where constitutional questions are raised, however, "the availability of judicial review is presumed" despite the directive of 42 U.S.C. § 405(h) that the final decision of the Commissioner may only be reviewed as provided by the Social Security Act. *Califano v. Sanders*, 430 U.S. 99, 108-09 (1977).

### III.  PARTIES' POSITIONS

Plaintiff asserts that: (1) Plaintiff's due process rights were violated by the irregular procedures followed by Defendant in seeking overpayment recovery from Plaintiff; (2) Defendant did not apply correct legal principles in determining that Plaintiff was liable for the overpayment; and (3) Defendant's finding that Plaintiff was liable was not supported by substantial evidence. *See generally doc. 18*. Plaintiff argues that these considerations warrant reversal or remand of the Commissioner's decision. *Id.* at 21. Defendant asserts that: (1) Plaintiff's ability to be heard at the supplemental hearing before the ALJ and to subsequently appeal the adverse decision to the Appeals Council afforded Plaintiff sufficient due process; (2) the ALJ and Appeals Council correctly applied the relevant legal principles in determining Plaintiff's liability; and (3) the Appeals Council's decision was supported by substantial evidence. *See generally doc. 27*.

Ultimately, I recommend finding that the Appeals Council's decision must be reversed because (1) the determination of Plaintiff's liability was founded on an incorrect application of the SSA regulations governing fault for overpayments and (2)

Plaintiff should not be held liable as a matter of law. Thus, I do not address the constitutional issue. *See Califano v. Yamaski*, 442 U.S. 682, 692 (1979) (Where, as here, a plaintiff brings both constitutional and statutory challenges to the Commissioner's finding of liability, the Court "usually should pass on the statutory claim before considering the constitutional question.").

## IV. LEGAL STANDARD

### A. Representative Payee Responsibilities

When an adult beneficiary is legally incompetent or either mentally or physically incapable of managing her own benefit payments, the SSA appoints a representative payee to receive benefits on her behalf. 20 C.F.R. § 404.2010(a). A representative payee has six responsibilities under the regulations, including to:

> (a) Use the benefits received on [the beneficiary's] behalf only for [the beneficiary's] use and benefit in a manner and for the purposes he or she determines . . . to be in [the beneficiary's] best interests;
> (b) Keep any benefits received on [the beneficiary's] behalf separate from his or her own funds and show [the beneficiary's] ownership of these benefits . . . ;
> (c) Treat any interest earned on the benefits as [the beneficiary's] property;
> (d) Notify [the SSA] of any event or change in [the beneficiary's] circumstances that will affect the amount of benefits [the beneficiary] receive[s], [the beneficiary's] right to receive benefits, or how [the beneficiary] receive[s] them;
> (e) Submit to [the SSA], upon [the SSA's] request, a written report accounting for the benefits received on [the beneficiary's] behalf, and make all supporting records available for review if requested by [the SSA]; and
> (f) Notify [the SSA] of any change in his or her circumstances that would affect performance of his/her payee responsibilities.

20 C.F.R. § 404.2035.

**B. Liability for Overpayments**

When a representative payee receives an overpayment of benefits on behalf of a beneficiary, both the beneficiary and payee may be held jointly and individually liable for the overpayment. SSR 64-7, 1964 WL 3608, at *2 (1964). Under the SSA regulations, when the SSA determines that an overpayment has occurred and decides to seek recovery of the overpayment, the individual from whom the SSA seeks the recovery is immediately notified. 20 C.F.R. § 404.502a. Such notice should contain—among other information—the overpayment amount; how and when it occurred; explanations regarding the individual's right to request reconsideration of the overpayment determination and right to seek waiver of overpayment recovery; how to seek waiver; and the procedures that such waiver request entails, including automatic file review and access to a pre-recovery hearing after the file review. *Id.*

Under the Social Security Act, "in any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this title or would be against equity and good conscience." 42 U.S.C. § 404(b)(1); *see also* 20 C.F.R. § 404.506. Thus, determining liability for overpayment requires a two-pronged analysis of (1) whether the person from whom recovery is sought is without fault for overpayment; and (2) whether

recovery would defeat the purpose of the Social Security Act or be against equity and good conscience.

### i. Fault

In considering whether a person was without fault for the overpayment, the SSA will consider "all pertinent circumstances . . . ."  20 C.F.R. § 404.507.  The SSA will find that the person from whom recovery is sought was not without fault if "the facts show that the incorrect payment . . . resulted from" one of three causes:

(a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
(b) Failure to furnish information which he knew or should have known to be material; or
(c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

*Id.* § 404.507(a)-(c).  When the SSA also bears fault for making the overpayment, that fact will not relieve from liability any individual who is found to be not without fault under this regulation.  *Id.* § 404.507.  According to the SSA guidance regarding fault, "[a]ny individual who demonstrates either a lack of good faith or failure to exercise a high degree of care in reporting circumstances which may affect entitlement to or the amount of benefits will be found at fault for the overpayment."  POMS GN 02250.005. However, the degree of care that is expected by the agency "varies with the complexity of the circumstances giving rise to the overpayment and the capacity of the individual to realize that he/she is overpaid."  *Id.*

*ii. Defeating the Purpose of the Act or "Against Equity and Good Conscience"*

In the context of recovery of overpayments from a representative payee, the SSA has explained that this second waiver prong is met where the representative payee "used the amounts received for the benefit of the beneficiary[.]" SSR 64-7, 1964 WL 3608, at *2. District courts applying this prong have held that it would be against equity and good conscience to recover overpayments from a representative payee who did not "personally benefit[]" from acting as payee, "absent clear evidence that [the payee] was at fault[.]" *Harzewski v. Chater*, 977 F. Supp. 217, 225-26 (W.D.N.Y. 1997); *see also Greenberg v. Comm'r of Soc. Sec.*, No. 3:95CV593 (AWT), 1998 WL 229849, at *6 (D. Conn. Mar. 30, 1998) (citing *Harzewski* for the proposition that "recovery would be against the broader definition of equity and good conscience [where] the record contained no evidence that the representative payee had ever misused the funds or derived any personal benefit from them.").

## V. RATIONALE OF ALJ AND APPEALS COUNCIL

In explaining her decision that Plaintiff was not entitled to waiver, the ALJ first explained that Plaintiff is an organization "that is in the business of handling money for its clients," and noted that it was presently acting as a representative payee for more than one hundred people. AR at 21. The ALJ next cited testimony from Plaintiff's representatives at the supplemental hearing that they were unaware of the SGA earnings limits, that they were unaware that the disability benefit statements from the

SSA contained "an explanation about what to do if a claimant was working" on the reverse side, and that they assumed that reporting Ms. Iddings's wages fulfilled Plaintiff's responsibilities as representative payee. *Id.* The ALJ further cited testimony that the representatives were unaware of whether any of Plaintiff's employees had questioned the SSA about the payments. *Id.*

In ultimately concluding that Plaintiff "was not diligent in following up with [the SSA] about the claimant's work at Wal-Mart[,]" the ALJ wrote that the statements from the SSA "clearly indicate where to get information if a claimant returns to work" and explained that because Plaintiff is "in the business of managing [SSA] payments," it "should have known about the claimant's earning restrictions while collecting disability benefits." *Id.* Finally, the ALJ found that recovery of the overpayment from Plaintiff would not defeat the purpose of the Act because Plaintiff "needs to be held responsible for its actions," and noted that a former CEO of the organization earned more than $900,000 compensation per year. AR at 22-23. The ALJ credited only Ms. Light with the repayments that had already been made by Ms. Iddings on the basis that Plaintiff's fault was greater than Ms. Light's fault "because [Ms. Light] is not a professional money-managing corporation." AR at 23.

On appeal, the Appeals Council reiterated the ALJ's finding that Plaintiff is the representative payee for more than one hundred people, and stated that the ALJ therefore did not find the testimony of Plaintiff's representatives that they were

unaware of SGA earnings limits to be credible. AR at 8. In adopting the ALJ's finding that Plaintiff was not without fault for the overpayment, the Appeals Council simply stated that this finding "meet[s] the substantial evidence standard of review." *Id.* The Appeals Council explicitly declined to adopt the ALJ's findings that Plaintiff should be held "responsible for its actions" as well as her reference to the alleged compensation of Plaintiff's former CEO. *Id.* The Appeals Council also overturned the ALJ's decision to credit only Ms. Light's overpayment liability by the amount already repaid by Ms. Iddings. *Id.* at 8-9.

## VI. ANALYSIS

### A. Overview Regarding Fault

As noted above, the first question is whether the person from whom recovery is sought is "at fault" for the overpayment. Defendant concedes that for Plaintiff to be "at fault," the cause of the overpayment must fall into one of the three categories set out in 20 C.F.R. § 404.507. See doc. 35 at 5-6. Defendant contends that fault can be established here under subsection (c).[3] *See id.* Subsection (c) applies where "the facts show that the

---

[3] At oral argument, Defendant's counsel also contended that Plaintiff could be found at fault under subsection (b). *See doc. 35* at 5-6. However, this was not the basis for fault offered by the Commissioner, and this argument was never raised in the briefing. *See* AR at 6-10, 15-23; *docs. 18, 27, 32.* The Court may not accept post-hoc justifications of the Commissioner's decision. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (citing *SEC v. Chenery Corp.*, 318 U.S. 80 (1943)). Moreover, counsel pointed to no material information Plaintiff failed to furnish, as required to support a finding of fault under subsection (b). *See doc. 35* at 5-6. The argument is therefore waived. *See, e.g., Wall v. Astrue*, 561 F.3d 1048, 1066 (10th Cir. 2009) (insufficiently developed arguments are waived); *Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1128 n.6 (10th Cir. 1999) (superficially developed arguments are waived); *see also Rosenbaum v. Colvin*, No. 2:12-CV-01035-DBP, 2013 WL 4881664, at *3 (D. Utah Sept. 12, 2013) (issues not raised in an opening brief are generally considered to be waived) (citing *Anderson v. U.S. Dep't of Labor*, 422 F.3d 1155, 1174-75 (10th

incorrect payment . . . resulted from acceptance of a payment which he <u>knew</u> or <u>could have been expected to know</u> was incorrect."  20 C.F.R. § 404.507(c) (emphasis added).[4]

I conclude that the record is devoid of any evidence that Plaintiff knew that the benefits paid to Ms. Iddings were incorrect.  Indeed, this appears to be undisputed as the ALJ relies exclusively on the argument that Plaintiff should have known Ms. Iddings was not eligible for benefits rather than arguing that it did know, and the Appeals Council adopted her finding in that regard without citing to any additional evidence.  AR at 21, 8.  Defendant's arguments before this Court also do not contend that Defendant had actual knowledge of the ineligibility.  *See generally docs. 27, 35*.

Therefore, Plaintiff's "fault" under the regulation hinges on whether it "could have been expected to know" that the payments to Ms. Iddings were incorrect.  20 C.F.R. § 404.507(c).  In other words, did Plaintiff have constructive knowledge of the incorrectness of the payments?

To uphold the Commissioner's decision to find Plaintiff at fault, her evaluation must be grounded in an evaluation of the evidence comporting with the proper legal standards

---

Cir. 2005)); *Home Loan Inv. Co. v. St. Paul Mercury Ins. Co.*, 827 F.3d 1256, 1268-69 (10th Cir. 2016) (explaining that the purpose of the waiver rule as applied to opening briefs is to ensure that the opposing party has proper notice and an opportunity to respond).

[4] The application of subsection (c) is explicitly limited to "the overpaid individual only."  20 C.F.R. § 404.507(c).  Plaintiff argues that a representative payee such as itself is not "the overpaid individual," and thus subsection (c) cannot serve as a basis for its liability.  *See Morency v. Bowen*, 677 F. Supp. 260, 263 (D.N.J. 1988).  Defendant, however, points out that a representative payee stands in the shoes of the beneficiary, and thus for all purposes under the regulation is the "overpaid individual."  *See* 20 C.F.R. § 404.2001.  As explained below, I conclude that, even assuming its applicability to representative payees, Plaintiff was not at fault under subsection (c).  Therefore, I make no recommendation on this matter of law.

and must reveal "substantial evidence" supporting a finding of fault under the constructive knowledge prong of subsection (c). *See Casias*, 933 F.2d at 800-01. Unfortunately, it fails on both points.

### B. Failure to Establish Comportment with Proper Legal Standards

First, it is impossible to determine whether the Commissioner's evaluation comported with the proper legal standards because neither the ALJ nor the Appeals Council set out the standard they applied. *See* AR at 15-23, 6-10. As noted above, Defendant's counsel concedes that a finding of fault must be based on one of the three circumstances set out in 20 C.F.R. § 404.507. Yet neither the ALJ nor the Appeals Council cited to that regulation, let alone identified under which of the three circumstances fault could be attributed to Plaintiff. While Defendant's counsel argues that subsection (c) supports a finding of fault, there is no way to know if that subsection was the basis for the Commissioner's evaluation here. That uncertainty is particularly problematic here where it is unclear whether subsection (c) ever applies to representative payees given the clause limiting its application to "overpaid individual[s] only" and, in the past, the agency has conceded that it does not. *See Morency v. Bowen*, 677 F. Supp. 260, 263 (D.N.J. 1988); *see also supra* p. 14, n.4. Under these circumstances, I cannot conclude that the Commissioner's evaluation comported with the proper legal standards. On that basis alone, I would recommend overturning the decision.

## C. No Constructive Knowledge Considering Duties of Representative Payee

Even assuming the Commissioner's decision was premised on an application of 20 C.F.R. § 404.507(c), the record does not include substantial evidence to support a finding of Plaintiff's fault under that regulation. As described above, the ALJ and Appeals Council relied on certain facts about Plaintiff to impute constructive knowledge to Plaintiff. However, constructive knowledge inquiries are not limited to facts. They are intertwined with an analysis of the duties imposed upon the individual to whom knowledge is being imputed. *See, e.g.*, *Rueli v. Baystate Health, Inc.*, 835 F.3d 53, 63 (1st Cir. 2016) ("The constructive knowledge inquiry is not limited to facts—it is intertwined with an analysis of the employer's duty to inquire into what workers are doing, and what reasonable diligence the employer must perform to ensure that unauthorized hours are not being worked."). Where, as here, a regulatory provision has specifically enumerated the duties of that individual, it is reasonable to parse what such individual is "expected to know" in light of those duties. *See id.* (explaining that an employer could rely on provisions specifying that employee work hours cannot be changed without permission to show that the employer had no duty to inquire into employees' hours worked where no requests for permission to work additional hours had been made).

This relationship between constructive knowledge and duty is identified most clearly in the Restatement (Second) of Torts which defines its concept of constructive

knowledge – a fact a person "should know" – as a fact that a person … would ascertain

… in the performance of his duty to another." RESTATEMENT (SECOND) OF TORTS ch. 1, §

12(2) (AM. LAW INST. 1965); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 19 cmt. b

(AM. LAW INST. 1981) ("'Should know' imports a duty to others to ascertain facts"). The

requisite connection between a duty which, if performed, would have led to

knowledge, and consequently charging the individual with constructive knowledge is

apparent throughout the law. *See, e.g., Matter of Rubarts*, 896 F.2d 107, 113 (5th Cir. 1990)

("[A] lender, although without actual notice of a debtor's plan to evade the state's

homestead provisions, can be charged with constructive knowledge by operation of the

duty of inquiry."); *N & N Contractors, Inc. v. Occupational Safety & Health Review Comm'n*,

255 F.3d 122, 127 (4th Cir. 2001) ("An employer has constructive knowledge of a

violation if the employer fails to use reasonable diligence to discern the presence of the

violative condition. Factors relevant in the reasonable diligence inquiry include the

duty to inspect the work area and anticipate hazards, the duty to adequately supervise

employees, and the duty to implement a proper training program and work rules."

(internal citation omitted)); *Bock v. Computer Assoc. Int'l*, 257 F.3d 700, 709 (7th Cir. 2001)

(Employee's constructive knowledge about severance plan could not be based solely on

fact that employer furnished summary of severance plan to employee, where employee

testified he could not recall when he first read summary, and employee was under no

duty to read it); *New Regency Prod., Inc. v. Nippon Herald Films, Inc.*, 501 F.3d 1101, 1107-

08 (9th Cir. 2007) ("[A]rbitrator's lack of actual knowledge of the presence of a conflict does not excuse non-disclosure where the arbitrator had a duty to investigate, and thus had constructive knowledge of, the conflict."); *Denver & Rio Grande W. R.R. Co. v. Conley*, 293 F.2d 612, 613 (10th Cir. 1961) ("[T]here was ample proof that the rail had become dangerously deteriorated after more than 30 years use, and the duty the law imposed upon the railroad to inspect the tracks over which it moves its trains imputes to it constructive knowledge of the unsafe condition.").

Put another way, an analysis of an individual's duties is required to fairly determine what that individual "could have been expected to know" in a given circumstance. 20 C.F.R. § 404.507(c). For example, a person without a duty to inquire cannot be **expected** to know something notwithstanding that he could have learned it with a simple question. The duties imposed on a person under the circumstances are what create the **expectation** that they should know a given fact. Therefore, to evaluate whether Plaintiff had constructive knowledge that Defendant was making incorrect payments to Ms. Iddings, one must examine the duties imposed upon Plaintiff in its position as a representative payee.

As quoted above, SSA imposes six responsibilities on representative payees. Three of those responsibilities deal with ensuring that all benefits accrue to the beneficiary and not the representative payee. 20 C.F.R. § 404.2035(a)-(c). Another responsibility is the submission of an accounting of benefits if requested by the SSA. 20

C.F.R. § 404.2035(e).  A further responsibility is to notify the SSA of a change in circumstances that would affect the representative payee's performance.  20 C.F.R. § 404.2035(f).  Finally, the representative payee is responsible to "notify [the SSA] of any event or change in [the beneficiary's] circumstances that will affect the amount of benefits [the beneficiary] receive[s], [the beneficiary's] right to receive benefits, or how [the beneficiary] receive[s] them."  20 C.F.R. § 404.2035 (d).  The question therefore is whether there is substantial evidence that, in performance of these duties of representative payee for Ms. Iddings, Plaintiff could have been expected to know that the benefits being paid to Ms. Iddings were incorrect.  I conclude that the answer is "no."

As noted above, Ms. Iddings's entitlement to benefits ended because (i) she was no longer working in a sheltered work environment, and (ii) she was earning more than the permissible SGA- level at her Wal-Mart job.  Given these circumstances, there is no reason to conclude that Plaintiff would have ascertained that Ms. Iddings was ineligible for benefits even assuming perfect compliance with the duties of representative payees under the regulations.  It is obvious that fulfilling most of the duties listed above would have no impact on discerning a beneficiary's loss of eligibility under such circumstances.  Indeed, in arguing that Plaintiff was rightly held at fault for the overpayment, Defendant relies on only one duty which it claims that Plaintiff failed to fulfill.  *See doc. 27* at 8; *doc. 35* at 4 (Defendant concedes breach of only duty from

subsection (d)).  Specifically, Defendant contends that Plaintiff failed to "notify [the SSA] of any event or change in [the beneficiary's] circumstances that will affect the amount of benefits [the beneficiary] receive[s], [the beneficiary's] right to receive benefits, or how [the beneficiary] receive[s] them."  20 C.F.R. § 404.2035(d).  However, it is apparent on close inspection that Plaintiff did not breach this duty.

Ms. Iddings stopped working in the sheltered work environment in November 1998.  Pursuant to SSA policy, she was permitted to continue to receive benefit payments for a grace period including the remainder of November 1998 and two additional months.  AR at 260, 278.  Thus, her entitlement to benefits ended months prior to Plaintiff's appointment as her representative payee, and even her grace period expired before or concomitantly with the appointment.  Defendant has offered no reasonable grounds on which to conclude that Plaintiff failed to notify the SSA about a change affecting benefits when, based on this record, the only material change occurred prior to its appointment as representative payee.  Put another way, Plaintiff could have fulfilled its duty to notify SSA of any change in circumstances affecting Ms. Iddings's benefits without thereby ascertaining Ms. Iddings's ineligibility, because no such material change occurred during the time it had that duty.  Therefore, Plaintiff cannot be charged with constructive knowledge of Ms. Iddings's ineligibility.

Accepting Defendant's argument and the rationale of the ALJ would impermissibly expand the duties of a representative payee beyond those listed in the

regulation.  The duties do not include any duty to police a beneficiary's entitlement to benefits and to take some action to decrease or stop undue payments, as such a requirement would transform a representative payee into an arm of the agency rather than a representative of the beneficiary.  *See generally* 20 C.F.R. § 404.2035.  Rather, the duties of the representative payee in the context of SSDI payments do not go beyond notifying the agency of events or changes in circumstances that will have a bearing on entitlements.  *See id*. § 404.2035(d).  As explained above, no changes occurred and it is undisputed that Plaintiff reported Ms. Iddings's wages throughout the time period that it served as her representative payee.  AR at 295; *see also doc. 35* at 6.

The decisions of the ALJ and the Commissioner contain no consideration of the duties of a representative payee when evaluating whether Plaintiff was "at fault."[5] Therefore, even assuming the decision was premised on an application of 20 C.F.R. § 404.507(c), the ALJ's finding of Plaintiff's fault and the Appeals Council's adoption of it failed to comport with the proper legal standards.  Furthermore, when the duties are properly considered, the record lacks any substantial evidence to support a finding of fault on the part of Plaintiff.  Thus, I recommend rejecting the finding of fault.

---

[5] At the supplemental hearing, the ALJ did opine that part of a representative payee's duty is to exercise a high degree of care which "includes being aware … of the regulations regarding actual payment of benefits for people for whom you are acting as a payee."  AR at 312.  However, no analysis of duty appears in her opinion, let alone an explanation of how a duty to report a change in circumstances which might affect entitlement implies a duty to actively investigate changes in circumstances which predate the representative payee's appointment.

### D. Even Under a Broader Interpretation of Constructive Knowledge, the Decision Is Not Supported by Substantial Evidence

Defendant argues that the duty of a representative payee to police a beneficiary's entitlement to benefits and to return undue benefits is subsumed within the duties listed in § 404.2035, as a representative payee cannot notify the agency of circumstances that will affect entitlement without a thorough understanding of which circumstances would be pertinent. *See doc. 35* at 4, 5. As explained above, I am not persuaded that this broad policing duty has been imposed on representative payees. Assuming *arguendo* that the duty to police a beneficiary's entitlements and return undue payments is indeed implied by § 404.2035, fault still may not be attributed to Plaintiff on the basis of violating that duty without first evaluating whether Plaintiff failed to exercise the requisite degree of care. *See* 20 C.F.R. § 404.511(a); *see also* POMS GN 02250.005. The ALJ correctly stated during the supplemental hearing that as a representative payee, Plaintiff was "required by law to exercise a high degree of care" in preventing overpayments. AR at 312. However, the degree of care expected "varies with the complexity of the circumstances giving rise to the overpayment[.]" POMS GN 02250.005. Under the facts of this case, there is not substantial evidence that Plaintiff failed to exercise the appropriate degree of care.

The circumstances underlying Ms. Iddings's loss of entitlement to disability benefits were complex—so complex, in fact, that neither counsel for Plaintiff nor Defendant correctly identified the reason why Ms. Iddings was no longer entitled to

benefits beginning in November 1998.  Both parties provided briefing and oral argument regarding the complexity of the regulations governing trial work periods and extended periods of eligibility.  *See doc. 35* at 5; *doc. 18* at 20; *doc. 27* at 9-10.  However, Ms. Iddings's trial work period ended in March 1991 and her 36-month extended period of eligibility began in April 1991, presumably ending in April 1994.  AR at 271.  Ms. Iddings's loss of entitlement to benefits therefore was unrelated to the trial work period or extended period of eligibility, and was instead related to the regulations governing what kind of work constitutes substantial gainful activity such that her "countable earnings" exceeded permissible SGA levels.  *See* 20 C.F.R. § 404.1573(c); AR at 272-75. Those countable earnings began exceeding permissible SGA levels in November 1998 once her Wal-Mart position was no longer under a sheltered workshop.  AR at 273, 294-95.

Thus, the error underlying the overpayments in this case could not have been avoided solely with knowledge of permissible SGA limits generally, as Ms. Iddings was eligible to receive benefits for over a year while earning beyond those limits due to the fact that her work was done under special conditions.  *See* AR at 273 (showing total monthly earnings of $934.01 - $985.70 from July 1997 to October 1998, but countable monthly earnings of only $261.52 - $276.00 during the same period).  Plaintiff's experience as a representative payee was exclusive to beneficiaries with intellectual disabilities.  AR at 7, 39.  The SSA specifically accommodates people with such

disabilities by permitting them to do work under special conditions that might earn them gross wages beyond permissible SGA limits, but reducing their "countable earnings" according to the actual value of work performed. 20 C.F.R. § 404.1573(c); *see also* SSR 83-33, 1983 WL 31255, at *2–*4. The regulations give specific examples of the special conditions that the SSA may find do not show a beneficiary has the ability to do SGA despite earning above SGA limits, including beneficiaries who require special assistance from other employees in performing their work and beneficiaries permitted to work at a lower standard of productivity or efficiency than other employees. 20 C.F.R. § 404.1573(c)(1), (c)(5). Thus, Plaintiff's decades of experience in serving as a representative payee for intellectually disabled beneficiaries would not necessarily indicate constructive knowledge that Ms. Iddings did not qualify for benefits due to her level of earnings, as it is not only plausible but likely that Plaintiff represented many beneficiaries over time who earned gross wages above the SGA limits but whose countable earnings were far less than the SGA limits. Indeed, Ms. Iddings herself fell into that category from June 1997 until November 1998. *See* AR at 273, 294-95.

However, neither the ALJ nor Appeals Council ever explained why Plaintiff should be charged with constructive knowledge that Ms. Iddings's countable earnings had increased to above permissible SGA levels two months prior to their appointment as her representative payee, or even made note of the circumstances leading to her ineligibility. *See* AR at 6-9, 15-23. Ms. Iddings's ineligibility as of November 1998

would not have been readily apparent.  It did not result from a shift from unemployment to employment.  It did not involve a change of employer.  Nor did it involve any change in the amount of pay.  AR at 273-74.[6]  Perhaps if even one of these circumstances—a return to work, a new employer, or an earnings increase—were present, and accepting Defendant's argument that representative payees have a broad duty to police the eligibility of beneficiaries, Plaintiff could be charged with constructive knowledge that it was accepting benefits on behalf of Ms. Iddings to which she was not entitled.  Lacking those facts, I conclude that the evidence of constructive knowledge is deficient.

Even more troubling, the ALJ made several material factual errors which undermine her findings on the issue of fault.  First, several statements in the ALJ's decision indicate that the ALJ believed that Ms. Iddings began working at Wal-Mart during the time period when Plaintiff served as her representative payee.  For example, the ALJ cites to Ms. Light's hearing testimony that she "believes the overpayment was caused by [Plaintiff] because [it was] the representative payee when the claimant began working at Wal-Mart."  AR at 20.  Furthermore, in discussing the factual basis for finding Plaintiff at fault, the ALJ cites to hearing testimony from Plaintiff's representatives that "[t]hey felt by reporting the wages, they did their part . . . .  They

---

[6] Ms. Iddings's total earnings remained at $985.70 per month throughout 1998 until they increased by approximately 6% to $1,047.00 per month throughout 1999; only her **countable** earnings increased in November 1998.  AR at 273-74.

were not aware if anyone ever inquired with Social Security about why her benefits did not decrease as her wages increased." AR at 21. Finally, the ALJ also states that Plaintiff "was not diligent in following up with Social Security about the claimant's work at Wal-Mart" because the benefits statements the SSA sent to representative payees such as Plaintiff "clearly indicate where to get information if a claimant returns to work." AR at 21. Implicit in each of these points are fundamental factual mistakes.

Contrary to the ALJ's implications, Ms. Iddings never "returned to work" while Plaintiff was her representative payee. Rather, she began working at Wal-Mart in June 1997, eighteen months prior to Plaintiff's appointment as her representative payee. AR at 15, 189. In addition, Ms. Iddings's wages did not significantly increase while Plaintiff served as her payee. AR at 273-75. Ms. Iddings was earning $1,047.00 per month when Plaintiff was appointed as her payee in February 1999, and continued earning that amount every month until January 2000, when her monthly wages increased to $1,162.55 per month for the following year. AR at 273-74. Throughout the remaining period when Plaintiff served as her payee, Ms. Iddings's wages fluctuated on a monthly basis from $735.78 to $1,929.95, but generally remained between $1000 and $1,200 per month. *See* AR at 274-75.[7] These wages were reported to the SSA. AR at 295; *see also doc. 35* at 6.

---

[7] Ms. Iddings earned no more than $1,221.75 in 21 of the 27 remaining months of Plaintiff's tenure as her payee.

The erroneous factual findings of the ALJ suggest that the circumstances surrounding Ms. Iddings's ineligibility should have been obvious to Plaintiff as an experienced representative payee, and they were thus essential to the Commissioner's imputation of constructive knowledge to Plaintiff underlying the finding of fault.[8] Yet in reality, those circumstances were complex and not readily apparent. Therefore, even under a broader interpretation of constructive knowledge than the undersigned has adopted above, the finding of Plaintiff's fault was not based on substantial evidence. Consequently, I again recommend rejecting that Plaintiff was at fault for the overpayments to Ms. Iddings.

### E. Recovery from Plaintiff Is Against Equity and Good Conscience

Rejecting the finding of fault does not end the inquiry. A person who is without fault for an overpayment may still be liable for repayment if recovery would not defeat the purpose of the Act and would not be against equity and good conscience. *See* 42 U.S.C. § 404(b)(1); *see also* 20 C.F.R. § 404.506. However, the law is clear that a representative payee "is not liable if [it] used the amounts received for the benefit of the beneficiary and was without fault with regard to overpayment." SSR 64-7, 1964 WL 3608, at *2.; *see also Harzewski*, 977 F. Supp. at 225-26 (against equity and good conscience to recover overpayments from a representative payee who did not "personally benefit[]" from acting as payee, "absent clear evidence that [the payee] was

---

[8] While the Appeals Council addressed other errors in the ALJ's opinion, it did not address these errors and appeared to accept them as correct.

at fault[.]"); *Greenberg*, 1998 WL 229849, at *6 (citing *Harzewski* for the proposition that "recovery would be against the broader definition of equity and good conscience [where] the record contained no evidence that the representative payee had ever misused the funds or derived any personal benefit from them."). Defendant does not contend, and there is no evidence to suggest, that Plaintiff ever misused Ms. Iddings's benefit payments. *See, e.g., doc. 18* at 20-21; *doc. 27* at 10 (Defendant does not dispute Plaintiff's contention that it never misused the funds, but asserts that such argument is "misplaced" where fault was properly attributed to Plaintiff). Therefore, should the Court adopt the recommended finding that Plaintiff was without fault for the overpayment, the decision to hold Plaintiff liable cannot stand.

### F. Reversal or Remand?

Having concluded that the Commissioner's decision must be overturned, the final question is whether the case should be reversed and terminated, or remanded for further proceedings. Plaintiff asks the Court to "reverse or remand the Social Security Administration's decision that ENMRSH is liable for repayment of benefits overpaid to Sharlene Iddings and that ENMRSH is not entitled to a waiver of any repayment obligation." *Doc. 18* at 21. Unfortunately, Plaintiff provides no standard or argument pertaining to selecting between these two alternatives. For its part, Defendant argues

for affirmance of the decision, but makes no argument in its briefing on the appropriateness of reversal or remand should the Court disagree. *See generally doc. 27.*[9]

The instant action is brought pursuant to 42 U.S.C. § 405. Subsection (g) of that statute provides that the "court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Ordinarily, the choice between remand and a final order arises in an applicant's appeal of a denial of benefits, but the factors relevant in such cases also appear relevant here. Those factors include the length of time a matter has been pending, *see, e.g., Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 746 (10th Cir. 1993), the conduct of the agency in adjudicating the action, *see id.*, and whether or not given the available evidence, remand for additional fact-finding would serve any useful purpose. *See, e.g., Harris v. Sec'y of Health & Human Servs.*, 821 F.2d 541, 545 (10th Cir. 1987) (citing *Talbot v. Heckler*, 814 F.2d 1456, 1466 (10th Cir. 1987)).

Balancing these factors, I recommend final reversal without a remand for further proceedings. First, I note the length of time between the overpayments and the instant action. As of now, the earliest overpayments were made more than eighteen years ago and the nearest in time more than fourteen years ago. Given this passage of time and

---

[9] At oral argument, counsel for Defendant argued that remand would be appropriate in any case for analysis of the second prong of the waiver inquiry—i.e., whether recovery would be against equity and good conscience—as the Commissioner's decision did not include a finding on that prong. *See doc. 35* at 9. For the reasons already explained, that argument is not supported by the governing law. *See supra* p. 28.

the fact that the Plaintiff long ago transferred or spent all the funds on behalf of Ms. Iddings, forcing Plaintiff to attempt to defend itself on issues of actual or constructive knowledge of the circumstances surrounding Ms. Iddings's ineligibility would be unfair.[10] Second, the agency is directly responsible for this exceptionally long gap given its failure to seek recovery from Plaintiff until more than eight years after it discovered overpayments had been made. Moreover, I am persuaded that the agency's failure to comply with own regulations regarding notice contributed to the unclear record before the ALJ and the ALJ's inaccurate understanding of the facts. *See* 20 C.F.R. § 404.502a (requiring that the agency immediately notify any individual from whom overpayment recovery is sought of the overpayment when it is identified, and providing for a multi-step waiver request process which would thoroughly develop the facts in a usual case). Finally, while I conclude that the ALJ applied the wrong legal standard in determining fault, I have also considered the facts assuming a broad concept of constructive knowledge. Even under that standard, I am doubtful that additional fact-finding could lead to substantial evidence supporting a finding of fault by Plaintiff.

## VII. CONCLUSION

For the foregoing reasons, I recommend finding that the Commissioner's final decision was founded on a misapplication of the pertinent legal principles and that

---

[10] Such unfairness is only compounded by the fact that Plaintiff is an organizational entity, whose institutional memory erodes rapidly with the passage of time. *See, e.g.,* AR at 296-97, 302-311 (testimony from Plaintiff's representatives reflects gaps in memory, lack of personal familiarity with Ms. Iddings's case requiring testimony from Ms. Iddings on key factual points, and a reasonable institutional policy to retain bank statements for only seven years).

Plaintiff is entitled to waiver of overpayment recovery.  Therefore, I recommend that

Plaintiff's Motion to Reverse or Remand (*doc. 17*) be GRANTED, and that the

Commissioner's decision be REVERSED without a remand for further proceedings.

_____
GREGORY B. WORMUTH
United States Magistrate Judge

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**